**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy L. MASSEY and Larry P. Wages,
Defendants-Appellants.**

No. 86–4719.

United States Court of Appeals,
Fifth Circuit.

Sept. 3, 1987.

Dan P. Self, Jr., Meridian, Miss., Alvin M. Binder, Jackson, Miss., for Massey.

James M. Colette, Jackson, Miss., for Wages.

Nicholas B. Phillips, George Phillips, U.S. Atty., Jackson, Miss., for U.S.

Before RANDALL, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants Billy Massey and Larry Wages appeal their convictions for conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, and for committing mail fraud, in violation of 18 U.S.C. § 1341. Having reviewed the record, we find that it was reasonably foreseeable that the mails would be used in furtherance of appellants' scheme to defraud, but that the government never demonstrated beyond a reasonable doubt that the mails were, in fact, used. Therefore, we affirm appellants' convictions for conspiracy to commit mail fraud, and we reverse their convictions for committing mail fraud.

## I.

Billy Massey and Larry Wages conspired with three other individuals to obtain two loans fraudulently from United Companies Mortgage of Mississippi (UCMM). UCMM is a subsidiary of United Companies Financial Corporation (UCFC) of Baton Rouge, Louisiana. Massey and co-conspirators Danny Baker and Tommy Molpus were principals in the Massey-Baker-Molpus Insurance Company (MBM). Wages was

manager of the Meridien, Mississippi, branch of UCMM. The fifth co-conspirator, Harry McMain, was an attorney in Meridien. The conspiracy involved a scheme to obtain two loans from UCMM, one in the name of MBM in the amount of $61,425.00, and another in the name of James Clark for approximately $11,000.00.

The application for the MBM loan stated that the purpose of the loan was to enable MBM to purchase computer equipment from M–P Duplicating Systems. An accountant was hired to prepare false financial statements in support of the loan, and McMain reported an incorrect number of liens on a certificate of title for property put up by MBM as collateral for the loan. The Clark loan was ostensibly for the purpose of purchasing logging equipment. Co-conspirator Baker signed Clark's name to the loan documents. False financial statements were prepared for this loan as well, and McMain prepared a certificate of title for collateralized property that falsely stated that the property was owned by James Clark. In fact, Larry Wages owned the property. A false real estate appraisal was submitted to UCMM, indicating that the property contained a house, when, in fact, the house had already burned down.

On October 28, 1980, at the direction of appellant Wages, UCMM issued a check in the amount of $61,425.00 jointly payable to MBM and M–P Duplicating Systems. M–P Duplicating Systems never received any of the proceeds of this check. On December 1, 1980, also at Wages' direction, UCMM issued a check in the amount of $10,740.00 to James Clark. Clark testified that he never applied for the loan, nor did he receive any of the proceeds of this check. Both checks were prepared and delivered to UCMM in Meridien, and were drawn on UCFC's bank account in Baton Rouge.

It was customary office procedure for UCMM to send certain loan documents to UCFC's home office in Baton Rouge, Louisiana. Not all documents were sent, however; some loans were processed and approved entirely in Mississippi. Conflicting testimony was presented at trial concerning whether any of the documents for either of the MBM loan or the Clark loan were sent to Baton Rouge. Moreover, the evidence at trial established that documents were normally transported from office to office via several methods of transmission, including the United States Postal Service, the United Parcel Service, Federal Express, and hand delivery. Apart from conflicting testimony about the "standard office procedure," there was no evidence to establish whether the United States mails had been used to send MBM loan documents or Clark loan documents from Mississippi to Louisiana.

On October 2, 1985, Massey and Wages were indicted and charged with conspiring to commit mail fraud, in violation of 18 U.S.C. § 371 (Count 1), and with committing mail fraud, in violation of 18 U.S.C. § 1341 (Count 2). On October 17, 1985, Massey moved to sever the trial of his case from that of Wages. The district court denied the motion.

On the eve of the trial, the government located a typewritten version of one of the loan documents. A handwritten copy had been furnished to opposing counsel during the discovery process. After the trial began, appellee notified appellant Massey's counsel of the existence of the typewritten copy. Massey's counsel indicated that he would object to its introduction at trial, and the government decided not to introduce the document. At trial, appellant Wages' counsel began to cross-examine a government witness concerning the handwritten document. At that time, the government undertook to introduce the typewritten document. The district court allowed its introduction over appellants' objections and allowed Wages' counsel to reopen his cross-examination of the government witness.

Massey and Wages were found guilty on both Counts 1 and 2. The United States moved to assess costs of prosecution against appellants, and a hearing was scheduled. Before the hearing, the district court sentenced Massey and Wages to three years imprisonment on Count 1 and probation on Count 2. The government then moved to correct the sentences in light of the pending motion to assess appellants for the costs of their prosecution. Appellants objected, but the motion was granted. Ap-

pellants were assessed $1,600.00 each, and their sentences were appropriately amended.

Appellants appeal their convictions, claiming that their convictions must be reversed because (1) the evidence presented at trial on the substantive mail fraud count was insufficient to prove that anything was mailed by or on behalf of any of the conspirators; (2) the trial court improperly instructed the jury regarding the necessity of proving use of the mails as an overt act in furtherance of the conspiracy, and the evidence does not establish beyond a reasonable doubt that they intended or otherwise contemplated the use of the United States mails in furtherance of their conspiracy to defraud; (3) a fatal variance exists between the indictment and the proof at trial regarding United Companies; (4) the trial court erred in denying Massey's motion to sever his trial from that of his co-conspirator Wages; (5) the trial court committed reversible error in admitting a partially-disclosed typewritten document into evidence; and (6) the trial court erred in allowing the government to assess costs against appellants. We will address these contentions in turn.

## II.

■ Appellants claim that their convictions for committing mail fraud must be reversed because the evidence presented at trial was insufficient to prove that anything was mailed by or on behalf of any of the conspirators. The crime of mail fraud has three elements, each of which the government was required to prove beyond a reasonable doubt: (1) that the defendant participated in some scheme or artifice to defraud; (2) that the defendant or someone associated with the scheme or artifice either used the mails or caused the mails to be used; and (3) that the use of the mails was for the purpose of executing the scheme. *Armco Industrial Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 481–82 (5th Cir.1986). The record demonstrates that the government failed to prove beyond a reasonable doubt the second of the three elements.

■ There is no direct evidence of mailing by appellants or their co-conspirators.

Rather, the government's proof consists entirely of circumstantial evidence concerning the "usual" office procedure. Proof of mailing can be established by circumstantial evidence. *See United States v. Bowman,* 783 F.2d 1192, 1197 (5th Cir.1986); *United States v. Ledesma,* 632 F.2d 670, 675 (7th Cir.) ("[T]estimony as to office practice is sufficient proof of mailing."), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980). But the use of circumstantial evidence does not relieve the government of its burden of establishing use of the mails "beyond a mere likelihood or probability," *United States v. Srulowitz,* 785 F.2d 382, 387 (2nd Cir.1986), or by more than mere speculation. *United States v. Scott,* 730 F.2d 143, 147 (4th Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984). Circumstantial evidence "such as testimony regarding office practice" is sufficient only "so long as the circumstances proven directly support the inference and exclude all reasonable doubt to the extent of overcoming the presumption of innocence." *United States v. Brooks,* 748 F.2d 1199, 1203 (7th Cir.1984).

The evidence does not exclude all reasonable doubt as to whether any of the co-conspirators used the mails in furtherance of their scheme to defraud. The proof offered by the government included testimony by appellant Wages' secretary, Jo Ann Cole, that the usual office procedure was to mail all loan documents to UCFC's Baton Rouge office for approval via the United States mail. On cross-examination, however, Cole admitted that many documents were never sent to the Baton Rouge office. She testified that loans were "frequently" approved by UCFC by telephone, so that transmission to Baton Rouge was not necessary. Neither loan package contained a cover letter, which Cole normally attached to the files that were transmitted to Baton Rouge. Finally, the face of one of the documents relating to the Clark loan had been inscribed in red pencil with the words, "Who approved?", raising the inference that it had never been approved in Baton Rouge.

Not only was Cole unsure about whether any documents were transmitted to Baton

Rouge, she also was unsure about whether the United States mail would have been used to transport documents if they were sent. Cole testified on cross-examination that "in many instances" Federal Express and UPS shipping services were used to transfer the documents. Cole admitted that loans were "frequently" approved in Meridien by visiting UCFC supervisors, and that those supervisors sometimes carried loan documents with them from Meridien to Baton Rouge. Finally, Cole stated that she had no personal knowledge that any Clark or MBM documents were mailed to Baton Rouge. Rather than excluding all reasonable doubt, Cole's testimony raises substantial doubt as to whether appellants used the United States mail.

The only other witness whose testimony addressed the issue of whether a mailing occurred was John Gray, UCFC's supervisor in charge of the Meridien office at the time the alleged mail fraud occurred. Gray corroborated Cole's admissions that loans were sometimes approved by telephone, that loan documents were sometimes transported to Baton Rouge by UCFC supervisors visiting the Meridien office, and that documents were transported by Federal Express and UPS. Gray admitted that he had no personal knowledge that any of the Clark or MBM loan documents were mailed to Baton Rouge. His testimony also raises substantial doubts as to whether appellants mailed or caused to be mailed any documents in furtherance of their scheme to defraud.

In the absence of any other evidence establishing that a mailing occurred, we must hold that the government did not meet its burden of showing "beyond a mere likelihood or probability" that appellants used the mails. Therefore, we must set aside appellants' convictions on the charge of committing mail fraud.

## III.

Appellants assert that their convictions for conspiring to commit mail fraud must be reversed because (a) the trial court improperly instructed the jury regarding the necessity of proving use of the mails as an overt act in furtherance of the conspiracy, and (b) the evidence does not establish be-

yond a reasonable doubt that they intended or otherwise contemplated the use of the United States mails in furtherance of their scheme to defraud. Because of the nature of the conspiracy count, we find appellants' arguments unpersuasive. We address them in turn.

### A. *Jury Instructions*

"In reviewing the sufficiency of a trial court's jury instructions, an appellate court 'must examine the adequacy of the charges as a whole in the context of the entire trial to determine whether they adequately presented the issues to the jury.'" *United States v. Stanley*, 765 F.2d 1224, 1237 (5th Cir.1985), *citing United States v. Graves*, 669 F.2d 964, 970 (5th Cir.1982).

Count 1 of appellants' indictment, charging them with involvement in a conspiracy, alleged that as part of the conspiracy "the defendants would cause to be delivered by mail certain paperwork relating to the loan applications." The indictment also listed as an overt act that appellant Wages "caused to be sent through the mails for delivery" a letter to UCFC. In his jury instructions, the trial judge charged the jury on Count 1 as follows:

> Conspiracy to commit mail fraud ... is a different offense from the crime of mail fraud.... The crime of conspiracy can be established without proof of actual use of the mails. To establish the crime of conspiracy to commit mail fraud, the Government must prove that the conspirators agreed to participate in a scheme to defraud, which reasonably contemplated the use of the mail or that the nature of the scheme was such that the use of the mail was reasonably foreseeable or that the conspirators intended that the mails be used in furtherance of the scheme.
>
> ....
>
> To cause the mails to be used is to do an act with knowledge that the use of mails will follow in the ordinary course of business or where such use can reasonably be foreseen.

Appellants claim that the district court erred in failing to require proof of actual use of the mails in its charge because such

proof is a requirement for conviction under 18 U.S.C. § 371, and because such proof is a requirement for conviction under the particular indictment returned against these appellants.

■ Regarding the first claim, this Court has held that "[c]onviction of conspiracy to defraud under 18 U.S.C. § 371 requires an agreement by two or more persons to work together for an illegal purpose plus the commission of an overt act by any one of them in furtherance of the agreement." *United States v. Becker,* 569 F.2d 951, 959 (5th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). Under this definition, it is not necessary that any one particular overt act be proven, including actual use of the mails. *See United States v. Reynolds,* 762 F.2d 489, 494 (6th Cir.1985) ("Mailing is an element of the crime of mail fraud but not an element of the crime of conspiracy."); *United States v. Donahue,* 539 F.2d 1131, 1136 (8th Cir.1976) ("[W]e do not think that it was necessary to show as an overt act ... an actual use of ... the mails ...").

■ Moreover, reversal of appellants' convictions for committing the substantive crime of mail fraud does not require a reversal of their convictions for conspiring to commit mail fraud. Conspiracy to commit an offense and the commission of that offense are separate and distinct crimes. *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1288, 43 L.Ed.2d 616, 622 (1975); *United States v. Garza,* 754 F.2d 1202 (5th Cir.1985); *United States v. Todd,* 735 F.2d 146, 151–52 (5th Cir.1984) ("Under the conspiracy charge the government is only required to prove that at least one overt act was taken by one of the conspirators in furtherance of the conspiracy; it need not prove that the substantive offense was consummated."), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). We reject appellants' first claim regarding the district court's charge to the jury.

■ Appellants' second claim regarding the court's charge is that proof of use of the mails was necessary for conviction on Count 1 because of the particular indictment brought against them. Appellants urge that the district court effectively amended the indictment when it did not require proof of all the elements of the conspiracy as they were spelled out in the indictment. In other words, once the government declared that "caus[ing] to be delivered by mail certain paperwork" was part of the conspiracy itself, as well as being an overt act in furtherance of the conspiracy, the government was bound to prove that element of the crime, regardless of whether it could have made out a successful charge under § 371 without including that element. The answer to this contention is that Count 1 of the indictment only alleges an agreement to cause the mails to be used. Count 1 does not charge the commission of the acts themselves, except in the listing of the overt acts, and it has been demonstrated that not all of those need to be proven. We find no reversible error in the district court's jury instructions.

### B. *Intent to Cause the Mails to be Used*

■ Appellants assert that the evidence does not establish beyond a reasonable doubt that they intended or otherwise contemplated the use of the United States mails in furtherance of their scheme to defraud. Contemplation of the use of the mails is one of the three elements of the crime of mail fraud conspiracy: (1) an agreement between appellants and others (2) to commit the crime of mail fraud, and (3) an overt act committed by one of the conspirators in furtherance of that agreement. *See United States v. Ortiz-Loya,* 777 F.2d 973, 981 (5th Cir.1985). We review the record to determine whether the government proved the second element beyond a reasonable doubt.

"[C]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959). *See also United States v. Harrelson,* 754 F.2d 1153, 1174 (5th Cir.), *cert. denied,* 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985); *United States v. Beil,* 577 F.2d 1313 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634

(1979). There is no specific intent requirement regarding use of the mails in a substantive mail fraud case. "The test to determine whether a defendant caused the mails to be used is whether the use was reasonably foreseeable. The defendant need not intend to cause the mails to be used." *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1354 (5th Cir.1985). *See also United States v. Blankenship,* 746 F.2d 233 (5th Cir.), *reh'g denied,* 750 F.2d 69 (5th Cir.1984); *United States v. Finney,* 714 F.2d 420 (5th Cir.1983); *United States v. Toney,* 598 F.2d 1349, 1355 (5th Cir. 1979), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). The government's burden, therefore, is to demonstrate beyond a reasonable doubt that appellants agreed to engage in a scheme to defraud in which they contemplated that the mails would likely be used.

■ The government's proof meets this standard. Although Cole and Gray both admitted that the mails were not always used to transport documents from Meridien to Baton Rouge, there was no dispute that the standard method of transporting the documents was via the United States Postal Service. Cole testified that the "ordinary course of business" was for UCMM to use the mails to send documents to UCFC. Gray testified that the "usual transmission would be by mail." A jury properly could find that use of the mails to transmit these documents was reasonably foreseeable, and was understood by defendants to be so, despite the fact that the number of documents never transmitted to Louisiana and the frequency of the use of alternative methods of transmission to Louisiana combine to create reasonable doubts as to whether the Clark or MBM loan documents were actually mailed.

A determination that appellants could and did reasonably foresee that the mails would be used to further their conspiracy does not depend on a finding that the mails were actually used. The conspiracy was complete as soon as the agreement was reached and one overt act was committed. Therefore, appellants' violation of the conspiracy statute occurred, at the latest, when they fraudulently applied for the loans. That violation cannot be erased be-cause subsequent events transpired in such a way that nothing was ever mailed.

Appellant Massey asserts that the evidence connecting him to any intent to use the mails is too tenuous to allow for his conviction on the conspiracy count. Massey claims that while appellant Wages, a UCMM employee, may have known that documents were mailed from office to office, Massey had no knowledge that any documents would be transferred from the Meridien office.

■ We reject appellant Massey's argument, for the evidence established that Massey could have foreseen and did foresee that the mails would be used. Co-conspirator Danny Baker testified that his and Massey's insurance firm, the Massey-Baker-Molpus Insurance Co. (MBM), was in the business of providing insurance for collateralized property on behalf of UCMM. These insurance policies would be provided for properties on which UCMM was providing loans, loans for which approval by the home office in Louisiana was a normal ingredient. It is difficult to conceive that Massey did not reasonably foresee that doing business with the Mississippi branch of a Louisiana corporation would result in the use of the mail by either the branch or the home office.

Further, Baker testified that MBM had other business dealings with UCMM, including loans made by UCMM directly to MBM. One of those loans became central to the government's charge of mail fraud: the MBM loan for the purchase of computer equipment from M–P Duplicating Systems. The proceeds of the loan, $61,425.00, were given to Massey by Wages on a check drawn on a Baton Rouge bank from the bank account of United Companies, Inc., located in Baton Rouge. The check, with United Companies' address in Louisiana clearly appearing on its face, was endorsed by Massey. The jury could find that Massey knew that he was dealing with a branch office. Having determined that it was reasonably foreseeable that documents would be mailed from a Mississippi branch office of a Louisiana corporation to the home office in Baton Rouge, we find that

this evidence is enough to establish that Massey reasonably foresaw that the mails would be used.

█ Moreover, we find that the abundant evidence tying Massey to the various other parts of the scheme to defraud suffice to establish that he was a member of the conspiracy, regardless of his subjective knowledge of the relationship between UCMM and UCFC in Baton Rouge. It is well settled that "once the existence of a conspiracy and the defendant's participation in it are both established, slight evidence of the defendant's knowledge of the scheme may be sufficient to sustain the jury's finding that he or she was a member." *United States v. Malatesta,* 583 F.2d 748, 756 (5th Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). *See also United States v. Reda,* 765 F.2d 715 (8th Cir.1985); *United States v. Marsh,* 747 F.2d 7 (1st Cir.1984); *United States v. Green,* 735 F.2d 1018 (7th Cir. 1984); *United States v. Crockett,* 534 F.2d 589, 594 (5th Cir.1976). A conspiracy has been established in which it was reasonably foreseeable that the mails would be used. Massey's participation in that conspiracy has been established. We find the evidence summarized above satisfies the *Malatesta*'s "slight evidence" standard.

We reject appellants' second argument regarding their convictions for conspiracy to commit mail fraud.

## IV.

█ Appellants urge that a fatal variance exists between the indictment and the proof at trial regarding United Companies. They claim that the indictment charges them with conspiracy to defraud the United Companies Mortgage of Mississippi (UCMM), when in fact the victim of the fraud was the parent company, United Companies Financial Corporation (UCFC), located in Baton Rouge. Count 1 of the indictment charged that Massey, Wages, and others "devised ... a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses ... from [UCMM], which could and would be induced by defendants to make certain loans ..." Appellants claim that the loans were actually made by UCFC, since the checks for both loans were written on UCFC's accounts.

█ Where variance between the indictment and the proof at trial is alleged, a defendant is entitled to a reversal only upon a showing that the variance prejudiced his substantial rights. *Berger v. United States,* 295 U.S. 78, 81, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935) ("The true inquiry ... is not whether there has been a variance ... but whether there has been such a variance as to 'affect the substantial rights' of the accused."); *United States v. Young,* 730 F.2d 221, 223 (5th Cir.1984). An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). *See also United States v. Manotas-Mejia,* 824 F.2d 360, (5th Cir.1987) ("The indictment and proof must coincide to protect the accused from (1) surprise and (2) the risk of another prosecution for the same crime.").

There is no allegation by appellants that they were surprised by the government's proof at trial, or that the indictment was insufficient to inform them of the charges against them. The listing of the overt acts in Count 1 makes it clear that the allegations concern two specific loans, one in the name of James Clark, and one for MBM. The loan applications are specified by date, name, and amount. The checks disbursed pursuant to the loan application are identified by specific dates, specific amounts, and specific payees.

Appellants cite *Lubin v. United States,* 313 F.2d 419 (9th Cir.1963), to support their claim of prejudice. In *Lubin,* the government charged appellants with robbing a bank, but the government's proof showed that the money was stolen from an armored car company. This case demonstrates nothing about the standard of prejudice, for the government in *Lubin* simply failed to prove that a federal crime had been committed: no bank had been robbed.

Cases in which courts have held that a variance did not require a reversal include *United States v. Young, supra,* 730 F.2d at 225 (holding that indictment charging goods shipped "in interstate commerce" was not fatally at variance with proof showing goods shipped "in interstate or foreign commerce"); *United States v. Gaultier,* 727 F.2d 711 (8th Cir.1984) (holding that indictment charging use of "wires" in interstate commerce was not fatally at variance with proof showing use of wires, microwave or satellite transmission in interstate commerce); *United States v. Massey,* 629 F.2d 1084 (5th Cir. 1980) (holding that indictment charging defendant with "presenting" a bill of sale was not fatally at variance with proof showing that defendant mailed the bill of sale), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1490, 67 L.Ed.2d 620 (1981); and *United States v. Kaplan,* 576 F.2d 598 (5th Cir. 1978) (holding that indictment referring to pipe sold to "United Supply" was not fatally at variance with proof showing pipe sold to "United Pipe and Supply"), *cert. denied,* 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979).

The variance in this case is not critical. The indictment clearly indicated that although UCMM was the immediate provider of funds, UCFC was involved in the conspiracy as the parent of UCMM and the destination of loan documents to be sent through U.S. mails as part of the conspiracy. This case can be contrasted with *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), where the Supreme Court found a fatal variance between an indictment charging defendant with interrupting the movement of sand into Pennsylvania and the government's proof that the defendant interrupted the movement of steel out of Pennsylvania. In *Stirone,* the indictment failed to give notice of the relevant events constituting the crime. Here, the indictment provided full specificity regarding the exact events giving rise to the charge of conspiracy.

This rigorous particularity not only informed appellants about exactly what actions they had to answer for, but it also provided adequate protection against the risk of another prosecution for the same conspiracy. Should appellants be indicted again, the government would not be able to rely on these actions unless it can show that the subsequent indictment charges a different offense than does the indictment in the case before us. *See United States v. Nichols,* 741 F.2d 767, 771 (5th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985). We therefore reject appellants' claim that a fatal variance existed between the indictment and the government's proof at trial.

## V.

■ Appellant Massey urges that the trial court erred in denying his motion to sever his trial from that of his co-conspirator Wages. The decision as to whether to sever the trials of persons who are indicted together is within the discretion of the district court, and denial of a motion to sever will not result in reversal unless the defendant can demonstrate compelling prejudice against which the trial court was unable to afford protection, and that he was unable to obtain a fair trial. *United States v. Harrelson, supra,* 754 F.2d at 1174.

■ Massey complains of the "spillover" effect of introducing evidence incriminating Wages that did not incriminate Massey. Specifically, Massey refers to overt acts committed in regard to the Clark loan, with which, he contends, he had no connection. Baker, however, testified that Massey was involved in both loans. Baker claimed that Massey and Wages discussed with him the collateral for the Clark loan. The jury had the right to believe this testimony of Baker. With this evidence the jury properly could find that there was one conspiracy and that Massey was involved in it. *See United States v. Winship,* 724 F.2d 1116, 1122 (5th Cir.1984) ("The crucial factor in finding a single conspiracy centers on whether the alleged co-conspirators all took part in a common plan or scheme."). If the loans were part of one conspiracy, then there is no cause for the application of the spill-over doctrine.

Even if the loans were not related, however, Massey would still not be entitled to a reversal because the district court properly instructed the jury that they should consid-

er separately the evidence offered against each defendant. Such appropriate limiting instructions are sufficient to prevent the threat of prejudice resulting from unsevered trials. *See United States v. Lamp,* 779 F.2d 1088 (5th Cir.) (affirming conviction obtained in an unsevered trial even though the evidence was complex and interrelated), *cert. denied,* — U.S. ——, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986); *Harrelson, supra,* 754 F.2d at 1174; *United States v. Phillips,* 664 F.2d 971 (5th Cir. 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Berkowitz,* 662 F.2d 1127 (5th Cir.1981).

## VI.

Appellants assert that the trial court committed reversible error in admitting a partially-disclosed typewritten document into evidence. The admissibility of evidence is properly within the discretion of the district court, and evidentiary rulings will be reversed only upon a finding that that discretion was abused. *Micholas v. Homelite Corp.,* 780 F.2d 1150, 1155 (5th Cir.1986).

▮▮ The document at issue is a loan application made by appellant Massey to UCMM. Appellant Wages claims that he "committed himself" on cross-examination to a claim that the document wasn't mailed because it was handwritten, and the government effectively "tricked" him. Wages does not claim, however, that the government's behavior prevented him from making any other argument relating to the document or from attacking the government's proof in other ways. Wages' only claim is that he was substantially prejudiced by being denied the right to make an argument that the government had overlooked proof that the government, in fact, possessed. We reject such an argument.

▮▮ Moreover, the fact that the government did not inform each and every defense attorney about the existence of the typewritten document is not reversible error. Admission of the typewritten document added little to the government's case, since the prosecution ultimately failed to prove that anything had been mailed. *See United States v. Watson,* 669 F.2d 1374, 1384 (11th Cir.1982) (holding that government's disclosure to one defense attorney out of several was sufficient, and that introduction of evidence did not substantially prejudice defendants because it added little to the government's case). *Cf. United States v. Hartley,* 678 F.2d 961 (11th Cir.1982) (affirming district court's exclusion of documents not disclosed to any defense attorneys, but allowing the government to introduce testimony concerning excluded documents), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). The evidentiary ruling by the district court was not an abuse of discretion.

## VII.

Appellants urge that the trial court erred in allowing the government to assess costs against them. The government moved to assess the costs of prosecution against appellants before sentence was entered, and a hearing was set for a date after the sentencing hearing. The motion to assess costs was pending when appellants' prison sentences were imposed on September 19. The government asserts that the date for the costs hearing was set so as to allow proper accounting of the costs of prosecution. The government also explains that on September 25 it moved to amend the district court's judgment in light of the government's pending motion on costs. The September 25 motion was made well within the time limits of Rule 9 of the Uniform Local Rules of the U.S. District Court for the Southern District of Mississippi, which requires the government to prepare a "judgment within ten days after pronouncement of judgment by the Court."[1]

---

**1.** Appellant Wages claims that the government improperly relied on Fed.R.Crim.P. 36 in its September 25 motion. The government acknowledges that Rule 36 cannot be used to change the substantive terms of a sentence, but explains that reference to the rule was inadvertent. In any event, Rule 9 of the district court's

local rules provides adequate authority for the government's motion. In pertinent part, that rule provides:

(a) Time for Presentation. Unless the Court directs otherwise, within ten (10) days after pronouncement of judgment by the Court, or after announcement of settlement or an

 Appellant Wages argues that assessments of costs must be made before sentencing is imposed, citing *Barnes v. United States*, 223 F.2d 891 (5th Cir.1955), and *United States v. Jones*, 608 F.2d 386 (9th Cir.1979). There is no such rule, and both cases cited by Wages are inapposite. In *Barnes*, the district court attempted to condition the imposition of costs on the defendant's attempt to seek a reversal of the court's judgment, and on that judgment's affirmance. *Jones* dealt with the timeliness of a second motion for reconsideration of a suppression motion.

The government's original motion for assessment of costs was properly made a day before the sentencing hearing. The subsequent motion to amend the judgment was made in accordance with Local Rule 9. Appellants' contentions are without merit, and we affirm the assessment of the costs of their prosecutions.

## CONCLUSION

 Because the government failed to prove that appellants mailed anything in connection with their scheme to defraud, we reverse their convictions for committing the crime of mail fraud, and vacate their sentences for those convictions. Because use of the mails was reasonably foreseeable, however, the government met its burden of demonstrating that appellants engaged in a conspiracy to use the mails or to cause the mails to be used in furtherance of their scheme to defraud. Consequently, we affirm appellants' convictions and the separately assessed accompanying sentences for conspiring to commit mail fraud.[2] Finally, we affirm the assessment of the costs of prosecution against appellants.

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

---

agreement of the parties as to a judgment to be entered, the attorney for the successful party shall present to the Court a proper judgment for entry in the case unless the time for presentation of a judgment is extended by the Court for cause....

**2.** Appellants do not allege any error regarding their sentences to three-year imprisonment based on their convictions on the conspiracy charge. Since the sentences imposed are well within the statutory limitations, *see* 18 U.S.C. § 371, and there is no claim that the district court abused its discretion, there is no need to remand the case for resentencing. *See United States v. Buckley*, 586 F.2d 498, 505 (5th Cir. 1978) (declining to remand case for resentencing where conviction for lesser-included offense was reversed and portion of sentence vacated), *reh'g denied*, 589 F.2d 1114 (5th Cir.), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979).