**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William R. METALLO,
Defendant–Appellant.**

No. 88–3767.

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1990.

Rehearing and Rehearing En Banc Denied
Oct. 5, 1990.

---

5. The other issues raised by appellants are mer-   itless and require no discussion.

J. Robert Cooper, Atlanta, Ga., for defendant-appellant.

Bruce Hinshelwood, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, JOHNSON and ANDERSON, Circuit Judges.

TJOFLAT, Chief Judge:

William R. Metallo appeals from a judgment of conviction entered, on jury verdicts, by the United States District Court for the Middle District of Florida. Metallo also appeals the sentences imposed by the district court. We affirm the district court with respect to both convictions and sentences.

I.

On April 13, 1988, a federal grand jury in Orlando, Florida, returned a six-count indictment against William R. Metallo (Metallo) and his son, William B. Metallo, charging them with: (1) conspiring with each other and with other persons to commit credit card fraud, in violation of 18 U.S.C. § 1029(b)(2) (1988) (count one); (2) credit card fraud, in violation of 18 U.S.C.

§ 1029(a)(2) (count two); and (3) mail fraud, in violation of 18 U.S.C. § 1341 (counts three through six). The two cases were severed, and Metallo's case proceeded to trial.

At trial, the Government presented evidence tending to prove the following facts. On April 5, 1984, Piedmont Airlines issued three Universal Air Travel Plan (UATP) credit cards [1] to Metallo, Joan Jackson (Metallo's girlfriend), and William B. Metallo. The cards were billed to the account of American Enterprise Publishing, Inc. (AEPI) of Apopka, Florida, a corporation that listed Metallo as president, William B. Metallo as vice president, and Joan Jackson as secretary. Metallo was the sole stockholder. Throughout the following year, the Metallos and Jackson used the cards to lease a car in Florida and for trips to such places as San Francisco, New York, Rome, Tel Aviv, the Bahamas, Jamaica, Hawaii, New Orleans, and a ski resort in Vermont. On May 30, 1985, the Metallos were heading for Paris and London, with tickets charged to the UATP account, when they were arrested at the Orlando International Airport. By this time, the AEPI account had an overdue balance of some $122,000, and two of the three cards had already been confiscated upon attempted use. Piedmont had never received any payment for any of the charges.

Before issuing the cards, Piedmont had requested a credit report on AEPI from Dun & Bradstreet, a credit-reporting service. According to the report, an AEPI representative informed a Dun & Bradstreet telephone interviewer that the corporation showed an upward trend in sales and profits and annual sales figures of more than a half-million dollars.[2] The AEPI representative's statement was false, however; during the relevant period, AEPI had little or no income, few assets of any kind, and no investors.

On July 1, 1988, the jury returned a verdict of guilty on all six counts. On September 25, 1988, the district court conducted a sentencing hearing and sentenced Metallo to five years incarceration on count one, ten years incarceration on count two (concurrent to the term imposed on count one), and five years incarceration, execution suspended, on each of the remaining counts (concurrent to one another but consecutive to counts one and two). Because the conduct that gave rise to the convictions occurred before November 1, 1987, the district court sentenced Metallo under the law that obtained at the time of his offenses and not under the guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, *see* 18 U.S.C. § 3551 *et seq.;* 28 U.S.C. § 991 *et seq.*

In this appeal, Metallo asserts essentially five grounds of error:

(1) The evidence was not sufficient to support his conviction;

(2) the district court erred in admitting irrelevant and highly prejudicial evidence and in admitting hearsay evidence that fell under no exception to the hearsay rule;

(3) the district court erred in charging the jury that a corporation can be a co-conspirator;

(4) the district court erred in denying Metallo's motion to continue the sentencing hearing; and

(5) the district court erred in not sentencing Metallo under the sentencing guidelines.

We address each assertion in turn.

## II.

### A.

Metallo claims that the evidence adduced at his trial was insufficient to support his convictions. We have considered the evidence in the light most favorable to the

---

**1.** The Universal Air Travel Plan credit card allows the holder to charge hotel accommodations, hotel meals, and car rental, as well as air transportation on any domestic and most international airlines, and to draw a limited amount of cash from the issuing airline.

**2.** Both William B. Metallo and Joan Jackson testified that they were not the painters of the rosy financial picture given to the Dun & Bradstreet interviewer.

Government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and conclude that there was substantial evidence to support the verdicts on all counts.

■ Evidence in the case indicated that Metallo applied for, obtained, and repeatedly used a UATP credit card just after he had declared bankruptcy. The credit card was billed to AEPI, which was shown to have minimal assets, and the Dun & Bradstreet report suggested that Metallo had hugely exaggerated the corporation's financial success in order to obtain the credit card.[3] No payments were made on the account, although correspondence found in Metallo's residence demonstrated his awareness that charges exceeded $122,000. From this evidence alone, a jury could determine that Metallo had committed credit card fraud by obtaining and using a UATP account from Piedmont Airlines with no intention to pay. When we consider the evidence concerning the conduct of the two other AEPI officers, who also held UATP cards on the same account—Joan Jackson, who leased a car on the UATP card, frequently traveled with Metallo, and charged airline tickets for him; and William B. Metallo, who worked and traveled with his father and frequently charged trips to the UATP account—the jury's determination that Metallo had conspired with others to commit credit card fraud is also supported.

■ Finally, according to Metallo, his convictions for mail fraud were not supported by sufficient evidence of his having used the United States mails to carry out his fraudulent scheme.[4] We disagree. To establish use of the mails, direct evidence is not required; rather, "[p]roof of mailing can be established by circumstantial evidence." *United States v. Massey,* 827 F.2d 995 (5th Cir.1987). A Piedmont Airlines official testified that it was the airline's routine practice to send business correspondence by United States mail. This evidence was sufficient to support the jury's determination that Metallo used the mail in furtherance of his fraud. *See United States v. Bowman,* 783 F.2d 1192, 1197 (5th Cir. 1986) (circumstantial evidence of bank's customary practice "more than adequate to support the jury's determination that the mailing in fact took place"); *United States v. Ledesma,* 632 F.2d 670, 675 (7th Cir.) ("'testimony as to office practice is sufficient proof of mailing'" (quoting *United States v. Joyce,* 499 F.2d 9, 15 (7th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974))), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980).

### B.

■ Metallo claims that the district court erred in admitting into evidence (1) records and testimony pertaining to his April 1984 bankruptcy filing and (2) the financial report prepared by Dun & Bradstreet. We note at the outset that a trial court enjoys considerable discretion in determining the admissibility of evidence and will be reversed only on a clear showing of abuse of discretion. *United States v. Martin,* 794 F.2d 1531, 1532 (11th Cir.1986).

■ Courts have long held that evidence of financial difficulties is admissible in fraud prosecutions to demonstrate knowledge, motive, intent, design, and absence of mistake. *See, e.g., United States v. Whaley,* 786 F.2d 1229, 1233 (4th Cir. 1986); *United States v. Pichnarcik,* 427 F.2d 1290, 1291 (9th Cir.1970). The evidence relating to Metallo's petition for bankruptcy, filed at approximately the

---

3. We address Metallo's challenge to the admission of the Dun & Bradstreet report into evidence in part B below.

4. Metallo was charged, in counts three through six, with four violations of 18 U.S.C. § 1341 (1988), which provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, ... places in any post office or authorized depository for mail matter, any matter or thing

whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned *not more than five (5) years,* or both.

same time that Metallo caused his corporation to apply for UATP credit cards, was probative of Metallo's knowledge, absence of mistake, and intent in obtaining and using the cards with no intention to pay Piedmont for the items charged. We cannot say that the trial court abused its discretion in admitting that evidence.

■ Metallo next argues that the district court erred in admitting the Dun & Bradstreet report as an exception to the hearsay rule, see Fed.R.Evid. 802. The business-records exception, however, provides that a record, "if kept in the course of a regularly conducted business activity," and if "it was the practice of that business activity to make the ... record," is admissible unless circumstances "indicate lack of trustworthiness." Fed.R.Evid. 803(6). For a record to be admitted under Rule 803(6), " 'the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest their trustworthiness.' " *United States v. Parker*, 749 F.2d 628, 633 (11th Cir.1984) (quoting *Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1259 (11th Cir.1983)). The district court permitted defense counsel to voir dire the witness, Dun & Bradstreet records custodian Frederick Sutter, before ruling on the hearsay objection. Sutter, who had not personally prepared the report, explained entries on the report and testified about Dun & Bradstreet's standard procedure for compiling such reports. After argument by both counsel, the district court stated that the key word used by the Government in response to the hearsay objection was "trustworthiness" and that the court would exercise its broad discretion to admit the report under the business-records exception to the hearsay rule.

Sutter's testimony supported the district court's finding that the document was trustworthy. The court's decision to admit the report was not an abuse of the court's considerable discretion in that area. *See United States v. Jones*, 554 F.2d 251, 252 (5th Cir.) [5] (under business-records exception, trial courts have "wide discretion in determining whether the document offered has the inherent probability of trustworthiness"), *cert. denied*, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977).

### C.

■ Metallo's third claim is that the district court erred in instructing the jury that a corporation may be a co-conspirator. Metallo made timely objection to the instruction solely on the ground that it impermissibly expanded the indictment and thereby permitted his conviction for an uncharged offense. Count one of the indictment, however, charged that (William R.) Metallo had conspired with William B. Metallo "and with other persons known to the Grand Jury." Metallo was thus put on notice at the outset that the Government might present evidence of Metallo's involvement with persons other than his son in support of its conspiracy theory. Metallo did not object to the inference that a corporation was a "person" with whom a natural person might conspire, nor did he request any additional instruction to the effect that, if the jury found that the corporation was merely Metallo's alter ego, it could not find him guilty of conspiring solely with that corporation.[6] We hold, therefore, that the district court did not err in giving the instruction over the only objection raised, *to wit*, that it impermissibly expanded the indictment.

### D.

■ Metallo's fourth claim is that the district court erred in denying his motion

---

5. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6. This court held, in *United States v. Hartley*, 678 F.2d 961, 972 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 1183, 103 S.Ct. 815, 834, 74 L.Ed.2d 1014 (1983), that a corporation may be found criminally liable for conspiring solely with its own officers, agents, and employees. The Government cites *Hartley* for the converse proposition that a natural person may be found criminally liable for conspiring with his own corporation. We do not reach this issue, however, since the only ground for objecting to the district court's instruction was that it impermissibly broadened the scope of the indictment.

for a continuance of sentencing, in violation of Fed.R.Crim.P. 32(c) and Title 18 U.S.C. § 3552(d) (1988), thereby denying him the right to due process in sentencing. As currently written, both the statute and the rule demand that the sentencing court provide the defendant (and defense counsel) with a copy of the presentence investigation report (PSI), prepared for the court by a United States probation officer, at least ten days before sentencing. *See* 18 U.S.C. § 3552(d); Fed.R.Crim.P. 32(c)(3)(A). It is undisputed that Metallo did not receive the report until three days before sentencing.

Section 3552(d) does not govern Metallo's case, however, because the section applies only to offenses committed after November 1, 1987, *see* Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 235, 98 Stat. 2031, *amended by* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1984 Act codified as amended at 18 U.S.C. § 3551 *et seq.;* 28 U.S.C. § 991 *et seq.*); *see also Berganzo–Romero v. United States,* 732 F.Supp. 275, 277–78 (D.P.R.1985). The statute and the version of Rule 32(c) governing offenses committed before November 1, 1987, read as follows:

**(c) Presentence Investigation.**

(1) *When made.* The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence [with certain exceptions not relevant here]....

....

(3) *Disclosure.*

(A) *At a reasonable time before imposing sentence* the court shall permit the defendant and his counsel to read the report of the presentence investigation.... The court shall afford the defendant and his counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

18 U.S.C. § 3562 (1982 & Supp.1984) (final emphasis added), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 212(a)(2), 98 Stat. 1987.

The record of the sentencing hearing below indicates that Metallo and his counsel were well aware of the contents of the PSI before they actually received it. The record further indicates that Metallo and defense counsel had discussed the PSI, were well-prepared to counter the information contained therein and to submit new information, and were afforded an opportunity by the court to do so. We conclude that Metallo's receipt of the PSI three days prior to sentencing afforded a reasonable time to read the PSI and to prepare for sentencing; we hold, therefore, that the district court did not err in denying Metallo's motion for continuance.

### E.

Metallo claims finally that the district court should have sentenced him under the sentencing guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, *see* 18 U.S.C. § 3551 *et seq.;* 28 U.S.C. § 991 *et seq.* This contention is foreclosed for the reason stated above: Metallo's offenses occurred before November 1, 1987, the effective date of the Sentencing Reform Act, *see supra* part D; and the November 1 implementation date applies only to crimes *committed* on or after that date, regardless of the date of conviction or sentencing. *See United States v. Burgess,* 858 F.2d 1512, 1513–14 (11th Cir.1988); *United States v. Haines,* 855 F.2d 199, 200 (5th Cir.1988) (Congress expressly limited applicability of guidelines to offenses committed after November 1, 1987). Thus the district court did not err in refusing to apply the guidelines when imposing Metallo's sentence.

### III.

For the foregoing reasons, the judgment of conviction and the sentence imposed by the district court are

AFFIRMED.