**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 94-40560

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL BRYANT BRUMLEY,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

(July 18, 1995)

Before WOOD[1], JOLLY, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge,

Michael Brumley appeals his conviction at a bench trial on three counts of wire fraud, three counts of money laundering and one count of conspiracy to commit mail fraud and wire fraud. Brumley does not appeal his conviction on two counts of making false statements to a financial institution, but he appeals his sentence. Finding that there was insufficient evidence to convict Brumley of wire fraud, money laundering and conspiracy to commit mail fraud and wire fraud, we REVERSE. Brumley's sentence of

---

[1] Circuit Judge of the Seventh Circuit, sitting by designation.

twenty-four months for two counts of making false statements to a financial institution is AFFIRMED.

## BACKGROUND

Brumley began working for the Texas Industrial Accident Board (IAB) in July, 1976, as a pre-hearing examiner. In July 1988 he was promoted to the position of regional director for the Houston area. As part of the state's new workers' compensation law, the IAB was re-organized in 1990 as the Texas Workers' Compensation Commission (TWCC) and Brumley was appointed the TWCC's regional associate director (essentially the same position he had held with the IAB). Beginning in 1982, Brumley solicited and accepted approximately $40,000 in loans from local attorneys, which he admitted was a violation of IAB ethical guidelines.

Between 1987 and 1992, Brumley also accepted over $86,000 in "loans" via wire transfers from another local attorney, John Cely. Although Cely understood that the money would never be repaid, he continued to make loans to Brumley. Cely wired the money from the Western Union office in Lufkin, Texas, to Brumley in Beaumont, Texas.

The procedure for making the Western Union wire transfers involved Cely, or one of his employees, filling out a form listing the recipient and the amount of the transfer. Cely paid for the wire transfer with checks payable to H.C. Walker, the Lufkin Western Union franchisee. The Western Union agent then, through a personal computer, dialled into Western Union's main computer in Bridgeton, Missouri. The Western Union agent would write a unique

2

ten-digit number, which he obtained through the computer in Missouri, on the back of the form he gave to Cely. This would serve as the receipt. Brumley was then immediately able to pick up the money.

After being notified that a money transfer was waiting for him, Brumley would go to a Western Union office in Beaumont to pick up the transfer. He would fill out a form identifying himself as the recipient and the Beaumont Western Union agent would call the Western Union computer in Bridgeton, Missouri, to verify the information. Brumley was then given a check for the amount of the transfer, which he would cash at either a bank or a grocery store.

In 1988, pursuant to a complaint from one of Cely's clients, the IAB began an investigation into Cely's law practice. Brumley on several occasions urged the IAB to reconsider its decision to formally investigate Cely, and Brumley assisted Cely in altering subpoenaed documents. Finally, Brumley aided Cely's efforts to lease TWCC property in Lufkin. The lease, if it had been consummated, would have violated ethical guidelines, as Cely practiced before the TWCC. Nevertheless, Brumley directed that the building specifications be faxed to Cely's office in the name of one of Cely's clients, James Fredregill. A TWCC employee later mailed the lease specifications to Fredregill. The property was ultimately leased to a disinterested party.

Michael Brumley was indicted in November 1993 for conspiracy to defraud the citizens of the state of Texas of the honest use of his services via mail and wire communications (18 U.S.C. § 371),

3

wire fraud (18 U.S.C. §§ 1343, 1346), money laundering (18 U.S.C. § 1956) and making false statements to a financial institution (18 U.S.C. § 1014). At the conclusion of the bench trial, the district court convicted Brumley on all nine counts in the indictment and he was sentenced to forty-eight months in prison[2]. Brumley now appeals.

## WIRE FRAUD

The essential elements of wire fraud, 18 U.S.C. § 1343[3], are: (1) a scheme to defraud and (2) the use of, or causing the use of, interstate wire communications to execute the scheme. United States v. Faulkner, 17 F.3d 745, 771 (5th Cir. 1994), cert. denied, 115 S. Ct. 786 (1995); United States v. Herron, 825 F.2d 50, 54 (5th Cir. 1987).[4] In order to prove that a defendant has used, or

---

[2]Brumley was sentenced to twenty-four months in prison for each of the two counts of making false statements to a financial institution, to be served concurrently. Brumley does not appeal those convictions (they are the only ones we do not reverse). Brumley does, however, challenge his sentence.

[3]18 U.S.C. § 1343 provides:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both. (emphasis added).

[4]The mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, statutes are nearly identical, with the main difference being whether the fraud involves the mails or interstate wires. Because the wire fraud statute was patterned after the mail fraud statute, the two are in pari materia, that is, they are to be read together. Therefore, cases construing the mail fraud statute are applicable to wire fraud. United States v. Donahue, 539 F.2d 1131, 1135 (8th Cir. 1976); United States v. Louderman, 576 F.2d 1383,

caused the use of, interstate wire communications, the government must show that the defendant knew, or that it was foreseeable to him that, an interstate wire communication would result. "Where one does an act with the knowledge that the use of the [interstate wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he `causes' the mails to be used." Pereira v. United States, 347 U.S. 1, 8-9 (1954).

In order for a wire fraud conviction to stand, then, it must be foreseeable to the defendant that his actions will result in an interstate wire communication. When a defendant in one state calls someone whom he knows is in another state, an interstate wire communication is clearly foreseeable. However, when the individual does not personally communicate, but instead causes another to communicate via interstate wires, foreseeability is not always so readily apparent. In such a case, therefore, the government must show that it was foreseeable to the defendant that his actions would cause an interstate wire communication. United States v. Maze, 414 U.S. 395, 399 (1974); Pereira v. United States, 347 U.S. 1, 8-9 (1954).[5]

---

1387 n.3 (9th Cir. 1978); United States v. Computer Sciences Corp., 689 F.2d 1181, 1188 n. 14 (4th Cir. 1982); United States v. Lemire, 720 F.2d 1327, 1334 n. 6 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984); United States v. Fermin Castillo, 829 F.2d 1194, 1198 (1st Cir. 1987).

[5]Two other circuits have held that the foreseeability of the interstate nature of the wire communication is irrelevant (at least where the defendant actually makes the communication). United States v. Bryant, 766 F.2d 370, 375 (8th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); United States v. Blassingame, 427 F.2d 329,

On appeal, Brumley argues that the evidence was insufficient to convict him of wire fraud, as there was insufficient evidence that he <u>caused</u> the interstate wire communication.[6] We agree. In a bench trial, the standard of review is a substantial evidence test. <u>United States v. Cardenas</u>, 9 F.3d 1139, 1156 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 2150 (1994).

> [I]n reviewing the findings of guilt by a trial court in a non-jury trial, the standard of review of the appellate court "is to determine whether such findings are supported by any substantial evidence. It is not our function to make credibility choices or to pass upon the weight of the evidence. The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty."

<u>Cardenas</u>, 9 F.3d at 1156 (quoting <u>United States v. Jennings</u>, 726 F.2d 189, 190 (5th Cir. 1984)).

Neither Brumley nor Cely[7] actually communicated with each

---

331 (2d Cir. 1970), <u>cert denied</u>, 402 U.S. 945 (1971). However, these cases are contrary to our existing precedent, which requires foreseeability. <u>United States v. Duncan</u>, 919 F.2d 981, 991 (5th Cir. 1990), <u>cert. denied</u>, 500 U.S. 9263 (1991); <u>United States v. Toney</u>, 598 F.2d 1349, 1355 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1033 (1980); <u>R.A.G.S. Couture, Inc. v. Hyatt</u>, 774 F.2d 1350, 1354 (5th Cir. 1985); <u>Snyder</u>, 505 F.2d at 601; <u>United States v. Shryock</u>, 537 F.2d 207, 209 (5th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1100 (1977).

[6]Brumley preserved error on his insufficiency of the evidence claims; he moved for a directed verdict at the close of the government's case, which was also the close of evidence. <u>United States v. Pierre</u>, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc).

[7]The indictment charged that the conspiracy was between Brumley and Cely although Cely was an unindicted co-conspirator.

other via interstate wires. The only interstate wire communications in the record were those made by the Western Union agents in Lufkin, Texas and Beaumont, Texas to the Western Union computer in Missouri. In order to determine whether Brumley or Cely caused an interstate wire communication, the issue is whether it was foreseeable to them that their actions would cause the Western Union agents' interstate wire communications.

At trial, and on appeal, the government mistakenly believed that foreseeability and knowledge of the interstate nature of the wire communication were not elements of wire fraud[8]. Therefore, the government did not seek to put on evidence showing foreseeability. In fact, when Brumley's attorney attempted to question Western Union's representative about foreseeability, the government objected, arguing that the foreseeability of interstate communications was not an element of the offense and therefore not relevant.

Even though the government did not consider knowledge or foreseeability to be matters it needed to prove at trial, we have examined the record to determine whether, nevertheless, there was sufficient evidence to allow the trial judge to determine that it was foreseeable to Brumley or Cely that their actions would cause

If one conspirator makes a wire communication to execute a scheme, then all conspirators are liable for wire fraud. United States v. Toney, 598 F.2d 1349, 1355 (5th Cir. 1979). Therefore, in determining knowledge and foreseeability relative to Brumley, we must also consider whether the interstate wire communication by Western Union was foreseeable to Cely.

[8]We note that the government cites only Second and Eighth Circuit cases and ignores all of our foreseeability precedent.

7

the Western Union agents' interstate wire communications. The only evidence in the record that could even inferentially show knowledge or foreseeability is: (1) Western Union is an international company with many agents throughout the United States and (2) the form Cely used in Lufkin, Texas, to initiate the sending of the money to Brumley listed, on the back, a Western Union corporate address in New Jersey.

Cely testified as a government witness. Nowhere in his testimony does Cely say, or imply, that he knew, or that it was foreseeable to him, that his actions could result in an interstate wire communication.

The only evidence that even attempted to address the foreseeability of interstate communications points to a lack of foreseeability. When asked on cross-examination by Brumley's attorney whether a wire transfer customer would be aware of Western Union's interstate computer system, the Western Union representative responded, "I can't answer that."

These facts, taken together, do not constitute notice that a wire transfer of money from Lufkin, Texas, to Beaumont, Texas, will involve an interstate wire communication. There is not sufficient evidence in this record upon which a trier of fact could find beyond a reasonable doubt that it was foreseeable to Brumley or Cely that their actions would cause the Western Union agents to make interstate wire communications. Because use of interstate wire communications is an essential element of the offense, Herron, 825 F.2d at 54; Faulkner, 17 F.3d at 741, the evidence at trial was

8

insufficient for the court to find Brumley guilty of wire fraud.

## CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD

Brumley was convicted of one count of conspiracy to commit mail fraud and wire fraud. Brumley argues on appeal that the evidence was insufficient to convict him. We agree.

The essential elements of conspiracy to commit mail fraud and wire fraud, 18 U.S.C. § 371, are: (1) an agreement between two or more persons; (2) to commit interstate mail fraud or wire fraud; and (3) an overt act committed by one of the conspirators in furtherance of the conspiracy. <u>United States v. Hatch</u>, 926 F.2d 387, 393 (5th Cir.), <u>cert. denied</u>, 500 U.S. 943 (1991); <u>United States v. Massey</u>, 827 F.2d 995, 1001 (5th Cir. 1987); and <u>United States v. Gordon</u>, 780 F.2d 1165, 1170 (5th Cir. 1986). "'Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense.'" <u>Massey</u>, 827 F.2d at 1001 (quoting <u>Ingram v. United States</u>, 360 U.S. 672, 678 (1959)).

Specific intent to use interstate wires is not required for wire fraud; interstate wire communication need only be foreseeable. Likewise, for mail fraud, the use of the mails need only be foreseeable. The government's burden, therefore, is to demonstrate beyond a reasonable doubt that Brumley agreed to engage in a scheme to defraud in which the use of the mail and interstate wire communications was at least foreseeable. <u>Massey</u>, 827 F.2d at 1002.

For the reasons previously stated, the evidence at trial was insufficient to prove that the use of interstate wire

communications was foreseeable. Therefore, the evidence was insufficient to prove Brumley intended to commit wire fraud, an essential element of conspiracy to commit wire fraud.

The evidence in the record is insufficient to show that Brumley and Cely conspired to commit mail fraud. The only testimony at trial concerning mailings was that of Alvin Little, an employee of the TWCC. Little testified that Brumley mentioned to him that Fredregill, a client of Cely[9], was interested in bidding for the TWCC lease in Lufkin, Texas. Later, when the lease specifications came out, Little mailed Fredregill a copy. This evidence is insufficient to allow a rational finder of fact to determine <u>beyond a reasonable doubt</u> that it was foreseeable to Brumley that the mails would be used to execute a scheme. <u>See United States v. Walters</u>, 997 F.2d 1219, 1223 (7th Cir. 1993).

Because the evidence was insufficient to prove that Brumley intended to commit mail fraud or wire fraud, we reverse his conviction for conspiracy to commit mail fraud and wire fraud.

## MONEY LAUNDERING

Brumley appeals his money laundering convictions on sufficiency of the evidence grounds, arguing that the evidence was insufficient to establish the underlying specified unlawful activity of wire fraud. We agree.

The money laundering statute, 18 U.S.C. § 1956, requires a financial transaction involving the proceeds of a specified unlawful activity. "Specified unlawful activity" is defined in 18

---

[9]Little did not know that Fredregill was Cely's client.

10

U.S.C. § 1956(c)(7)(A) to include any racketeering offense listed in 18 U.S.C. § 1961(1). One of the racketeering offenses identified in 18 U.S.C. § 1961(1) is wire fraud, 18 U.S.C. § 1343.

Brumley's three money laundering convictions were based on the specified unlawful activity of wire fraud. The wire frauds alleged in the money laundering counts are the same as those in the wire fraud counts. Therefore, for the reasons previously stated, the money laundering convictions are reversed because of insufficient evidence.

**SENTENCING**

Brumley raises two issues related to sentencing. However, these issues do not concern the false statements to a financial institution counts; they only concern the wire fraud, money laundering and conspiracy to commit mail fraud and wire fraud counts. As those counts have been reversed, we need not consider Brumley's sentencing issues. Therefore, Brumley's sentence of twenty-four months for two counts of making false statements to a financial institution is affirmed.

**CONCLUSION**

The evidence at trial was insufficient to prove that it was foreseeable to Brumley that his actions in receiving the Western Union wire transfer would cause an interstate wire communication. Because the defendant's use of interstate wire communications is an essential element of the offense of wire fraud, the evidence was insufficient to prove Brumley committed wire fraud. The evidence was likewise insufficient to prove Brumley conspired to commit wire

11

fraud.  Brumley's money laundering convictions were based on the underlying specified unlawful activity of wire fraud.  Because the evidence was insufficient to convict Brumley of the underlying wire fraud, it was also insufficient to convict him of money laundering.

For the foregoing reasons, Brumley's convictions for wire fraud, money laundering and conspiracy to commit wire fraud are REVERSED.  Brumley's sentence of twenty-four months for the two counts of making false statements to a financial institution is AFFIRMED.