**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-11223

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

ROBERT GLENDON MILLS, JR,

Defendant - Appellant.

Appeal from the United States District Court
For the Northern District of Texas, Fort Worth Division

December 21, 1999

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:

Robert Glendon Mills, Jr., defendant-appellant, appeals from (1) the district court's order denying his motion to dismiss, for lack of jurisdiction, his indictment of two counts of wire fraud, 18 U.S.C. § 1343, and (2) his conditional guilty plea conviction and sentence based on one count of wire fraud pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving his right on appeal to a review of the adverse determination of his motion to dismiss

1

the indictment as to the wire fraud counts for lack of jurisdiction. For the following reasons, we affirm the district court's judgment denying defendant's motion to dismiss for lack of jurisdiction and the defendant's conviction and sentence.

## I. Factual and Procedural Background

Robert Glendon Mills, Jr., was charged in a three count indictment with one count of bank fraud, 18 U.S.C. § 1344; and two counts of wire fraud, 18 U.S.C. § 1343. The indictment alleged, in pertinent parts, the following: Mills committed the bank and wire fraud offenses against the Colorado National Bank (CNB), a financial institution having its principal office in Denver and insured by the Federal Deposit Insurance Corporation (FDIC), and Mills's employer, AMR-Combs (AMR), a business comprised of a chain of fixed base operators which provided general aviation services. Mills was employed by AMR from November 1991 through March 1996. From in or about the summer of 1994 through or in or about July of 1995, Mills was an AMR controller, having signature authority and accounting responsibility over AMR's controlled disbursement accounts located at CNB. These included accounts used by AMR headquarters in Fort Worth and by AMR operations in McAllen, Texas. During June 1994 through July 1995 Mills wrote AMR business checks drawn on CNB and fraudulently designated himself as the payee. Mills deposited these fraudulent checks in his personal bank accounts at NationsBank (NB) in Dallas and Bank One Texas, N.A. in Bedford, Texas, both of which were insured by the FDIC. Mills fraudulently deposited into his NB account about fifteen AMR checks

2

totaling $35,861.84 and about nine such checks into his Bank One account totaling $43,603.92. In furtherance of Mills's scheme to defraud AMR, he caused corresponding electronic interstate transfers of funds between CNB and NB, as well as CNB and Bank One. These wire transfers were necessary for Mills to fraudulently divert AMR funds into his personal accounts at NB and Bank One. Mills knew that the checks drawn on AMR's account at CNB were fraudulent because he prepared these checks without proper authority in an effort to embezzle funds from AMR. He also knew that he could not successfully execute the scheme unless he was able to deceive CNB by misrepresenting that the fraudulent checks were genuine.

Specifically, Count One of the indictment alleged that beginning in May 1992 and continuing through March 1996 Mills committed bank fraud upon CNB and NB, FDIC insured institutions, 18 U.S.C. §§ 1344 and 2; Count Two alleged that on or about January 18, 1995, Mills committed wire fraud, 18 U.S.C. §§ 1343 and 2, by transmitting or causing to be transmitted by means of wire communications in interstate commerce $4,315 in funds from AMR's account at CNB in Aspen, Colorado into his NB account following the deposit of a fraudulent AMR check into his account at NB. Count Three alleged that on or about May 30, 1995, Mills committed wire fraud, 18 U.S.C. §§ 1343 and 2, by transmitting or causing to be transmitted by wire communications in interstate commerce a wire transmission of $9,613 in funds from AMR's account at CNB in Aspen, Colorado into his personal account at Bank One in Bedford, Texas

3

following the deposit of a fraudulent AMR check into his Bank One account.

Mills moved the district court to dismiss the indictment for lack of federal jurisdiction. The district court granted Mills's motion with respect Count One (bank fraud) but denied his motion with respect to Counts Two and Three (wire fraud). Mills and the government entered into a plea agreement. Mills agreed to plead guilty to Count Two, reserving his right to appeal the district court's denial of his motion to dismiss Counts Two and Three of the indictment for lack of jurisdiction. In exchange, the government agreed to dismiss Count Three of the indictment upon Mills's plea and sentence on Count Two.

On July 30, 1998, Mills pleaded guilty to wire fraud as charged by Count Two.[1] On October 15, 1998, the district court sentenced Mills to a fifteen month term of imprisonment to be followed by a three year term of supervised release. No fine was imposed, but the district court ordered payment of $137,411.67 in restitution and a $50 special assessment. Mills timely appealed from the district court's denial of his motion to dismiss the wire

---

[1]Mills pleaded guilty to violating 18 U.S.C. § 1343, which provides in relevant part that:
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both. . . .

18 U.S.C.A. § 1343 (West Supp. 1999).

4

fraud charges and judgment of conviction and sentence. On November 9, 1998, the district court granted the defendant's motion for release pending appeal from the judgment of conviction.

As part of the plea agreement the parties agreed to a resume of stipulated facts. In the agreement Mills acknowledged that he had personally reviewed the factual resume and understood that it would be incorporated by reference into the plea agreement and presented to the court as evidence. Mills and the government clearly intended that the stipulation of facts were to be taken into consideration by the appellate court in its review of the district court's denial of Mills's motion to dismiss both Counts Two and Three of the indictment.[2]

---

[2]The factual resume stated:

11. The parties have entered into this plea agreement whereby the defendant will enter a guilty plea to Count 2 of the indictment, which charges a violation of 18 U.S.C. § 1343 (wire fraud). As set forth in paragraph 10(d), this guilty plea is a conditional plea which permits the defendant to challenge the application of the wire fraud statute under the facts of this particular case. As part of this agreement, the defendant will have the right to appeal this Court's denial of his motion to dismiss the wire fraud charges for lack of jurisdiction. As part of the defendant's conditional plea, both the government and the defendant understand and agree that on appeal the government will contend that these stipulated facts give rise to a violation of 18 U.S.C. 1343 (wire fraud), and on appeal the defendant will contend on appeal (sic) that these stipulated facts do not give rise to a violation of 18 U.S.C. 1343 (wire fraud). The defendant does not now, nor has he ever disputed his guilt for the state offense of wrongfully taking his employer's funds.

. . . .

13. The defendant has personally reviewed the Factual Resume in this case and does not dispute the accuracy of the factual resume. The defendant further understands that the factual resume will be submitted to the court as evidence.

5

The factual resume, in pertinent parts, provided that Mills was employed as a controller by AMR, a corporation headquartered in the Dallas-Fort Worth area, and in that capacity Mills had check writing authority over the accounts through which he had wrongfully obtained funds -- AMR, Fort Worth and AMR, McAllen. From June 1994 through July 1995, while only empowered to issue business checks for authorized purposes, Mills knowingly and willfully issued numerous AMR checks to himself as the designated payee and thereby knowingly took AMR moneys without its consent. As a result of Mills's wrongful conduct, AMR sustained monetary losses of at least $125,000. These checks were drawn on CNB in Aspen, Colorado, and deposited into Mills's personal bank accounts at either NB in Dallas, Texas, or Bank One in Bedford, Texas.

The $4,315 check at issue in Count Two of the indictment was drawn on the AMR account at CNB and deposited on or about January 18, 1995, into Mills's personal account at NB. This check, together with all other checks deposited that day, was sent by NB to the Federal Reserve Bank-Dallas (FRB-Dallas). FRB-Dallas credited NB for all checks submitted that day, and FRB-Dallas also informed the other federal reserve banks of the total amount of all checks FRB-Dallas received that day from banks located in those FRB regions. In so doing, FRB-Dallas informed Federal Reserve Bank-Denver (FRB-Denver), via interstate wire transfer, of the total dollar amount of all checks that FRB-Dallas had received that were drawn on banks in the FRB-Denver region. That amount included the $4,315 check specified in Count Two, and the government relied upon

this interstate wire transmission to establish federal wire fraud jurisdiction.

FRB-Denver, upon receipt of those checks, debited CNB for the total of all checks (including the $4,315 check) received that day that were drawn on CNB.  CNB likewise debited the AMR account for all checks drawn on its account, including the $4,315 check.

## II. Analysis

We review questions of jurisdiction de novo.  <u>United States v. Becerra</u>, 155 F.3d 740, 756 (5th Cir. 1998).

The Supreme Court has said that because the mail and wire fraud statutes share the same language in relevant part, the same analysis applies to each.  <u>See</u> <u>Carpenter v. United States</u>, 484 U.S. 19, 25 n.6 (1987); <u>see</u> <u>also</u> <u>United States v. Brumley</u>, 59 F.3d 517, 520 n.4 (5th Cir. 1995)("cases construing the mail fraud statute are applicable to wire fraud"), <u>superseded on other grounds</u>, 116 F.3d 728 (5th Cir. 1997)(en banc); <u>United States v. Giovengo</u>, 637 F.2d 941, 944 (3rd Cir. 1980)(same).  The parties in their briefs, and we in this opinion, accordingly rely upon both mail fraud and wire fraud cases to inform our resolution of this appeal.

To establish wire fraud, the government must prove (1) that the defendant knowingly participated in a scheme to defraud; (2) that interstate wire communications were used to further the scheme; and (3) that the defendant intended that some harm result from the fraud.  <u>See</u> <u>United States v. Powers</u>, 168 F.3d 741, 746 (5th Cir. 1999).  For purposes of jurisdiction, the first and third elements (knowingly participating in a harmful fraudulent scheme)

were established by the allegations of the indictment as a whole, the plea agreement, and the resume of stipulated facts.[3]  Whether the second element (that interstate wire communications were used to further the scheme) was established is a more complex question.

Interstate wire communications were used to further the fraudulent scheme, and federal jurisdiction attaches, if the use of the wires by the banks was incident to an essential part of the scheme.  See Pereira v. United States, 347 U.S. 1, 8 (1954)(mail fraud is proven where it is established that (1) there was a scheme to defraud; (2) that the bank mailed the check incident to an essential part of the scheme; and (3) that the defendant caused the mailing by acting with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen even though not actually intended).

Mills relies principally upon Kann v. United States, 323 U.S. 88 (1944), for the proposition that the clearing of checks is not sufficient to confer federal jurisdiction under the wire fraud statute.  In essence, Mills argues that the interstate wire communications between FRB-Dallas and FRB-Denver were not incident to an essential part of the scheme because the embezzlement had already been completed when he deposited the $4,315 check into his

---

[3]The Supreme Court held in an early case: "Consent of the parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission."  Railway Co. v. Ramsey, 89 U.S. 322, 327 (1874); see also United States v. Anderson, 503 F.2d 420, 422 (6th Cir. 1974)(per curiam) (applying Railway Co. v. Ramsey to a criminal case).

8

account at NB (Count Two) and when he deposited the $9,613 check into his account at Bank One (Count Three), or, at the latest, when the banks credited his accounts in those amounts. In Kann, the Supreme Court held that where the mail fraud defendants cashed fraudulently obtained checks and received the moneys contemplated by the scheme such that the scheme reached fruition before the checks were placed into the mails for collection, it was "immaterial" to the defendants how the banks that paid or credited the checks would collect from the drawee banks and "[i]t cannot be said that the mailings in question were for the purpose of executing the scheme, as the statute requires." Id. at 94; see also United States v. Maze, 414 U.S. 395, 402 (1974)(defendant's use of stolen credit card for food purchase and hotel stay was complete prior to the use of the mails to communicate the charges or payment and thus the mailings were not sufficiently related to the scheme to confer federal jurisdiction); Parr v. United States, 363 U.S. 370, 393 (1960)(school employees' mail fraud convictions were reversed for lack of jurisdiction where unauthorized credit card purchases of gasoline reached fruition at time of receipt of gasoline such that mailed payments by school district to vendors was not in furtherance of the scheme); United States v. Evans, 148 F.3d 477, 482-84 (5th Cir. 1998)(defendant consummated the fraudulent scheme when supervisors approved falsified travel vouchers and before same were mailed to another office for reimbursement such that the mail fraud convictions were reversed); United States v. Vontsteen, 872 F.2d 626, 628-29 (5th Cir. 1989),

9

cert. denied, 498 U.S. 1074 (1991), superseded on other grounds, 950 F.2d 1086 (5th Cir.)(en banc), cert. denied, 505 U.S. 1223 (1992)(employee of pipe vendor who fraudulently pocketed profits from sales of pipe while refusing to pay pipe supplier completed the fraud prior to the mailing of invoices by the supplier to his employer).

However, in Kann the Supreme Court indicated that it is conceivable that "in some settings" the mere clearing of a check would be enough to confer federal jurisdiction. 323 U.S. at 94-95. The government argues, and we conclude, that the present case presents such a setting. In Schmuck v. United States, the Supreme Court held that where the interstate mailing is used to further and perpetuate a scheme involving a series of continual frauds, rather than a "one shot" deception, so that the perpetrator is not indifferent to the fact of who discovers the scheme or bears the loss, the jurisdictional element is satisfied. 489 U.S. 705, 714-15 (1989).

Schmuck involved the conviction of a car dealer who had manipulated twelve used car odometers and then sold the cars to at least three different retail dealers. Finding that Schmuck's was not a "one-shot" operation, but rather an ongoing fraudulent venture the success of which depended upon continued harmonious relations with the dealers, and in turn requiring the smooth flow of cars from the dealers to their customers, the Supreme Court reasoned that because the sales were not complete until the dealer submitted a title application form to the state on behalf of the

retail customer and the state title was received, the mailing of the forms containing fraudulent odometer readings was "'incident to an essential part of the scheme' satisfying the mailing element of the mail fraud offense." Id. at 711-12 (citing Pereira v. United States, 347 U.S. 1, 8 (1954)).

Similarly, in United States v. Davila, this court held that where interstate wire transmissions are at the heart of and essential to a fraudulent scheme and are of necessity interstate, the jurisdictional element is met. 592 F.2d 1261, 1264 (5th Cir. 1979). In Davila, the defendant engaged in multiple fraudulent interstate wire transfers of funds through Western Union to establish a de facto line of credit kiting scheme wherein subsequent Western Union money wires on credit were used by the defendant to pay for previous money wires on credit during the ten day grace periods allowed by Western Union for actual payment for each wiring of money. 592 F.2d at 1262-63.

Under the factual allegations contained in the indictment and under the express terms of the factual resume, Mills's scheme to defraud AMR was an ongoing venture and not a "one-shot" operation as it involved numerous checks totaling at least $125,000 and extended over at least thirteen months. Moreover, the $4,315 check referenced in Count Two was issued in January 1995 – near the temporal midpoint of the scheme that ran from June 1994 to July 1995; and the $9,613 check referenced in Count Three was issued in May 1995 - at least one month prior to termination of the scheme. Thus, success of the ongoing fraudulent venture depended upon

11

continued harmonious relations among Mills's personal banks, the Federal Reserve Banks, CNB, and AMR. Otherwise future fraudulent checks issued pursuant to the scheme would be dishonored and not credited to Mills's accounts. Additionally, Mills was not indifferent as to when the scheme was discovered or who bore the loss because the continuation of the scheme depended upon the successful deception of the intermediate parties and upon AMR bearing the losses that Mills, as AMR's controller, could conceal for an extended period. See Schmuck, 489 U.S. at 712. Therefore, the interstate wire communications between FRB-Dallas and FRB-Denver to facilitate the transfer of funds from CNB in Aspen, Colorado to NB in Dallas, Texas ($4,315 per Count Two) and to Bank One in Bedford, Texas ($9,613 per Count Three) were at the heart the scheme and were of necessity interstate. See Davila, 592 F.2d at 1264. Accordingly, we conclude that the indictment contained sufficient allegations to support the district court's denial of Mills's motion to dismiss the wire fraud counts for lack of federal jurisdiction. We conclude likewise that the plea agreement incorporating the factual resume provided a sufficient factual basis for the district court to enter conviction and sentence upon the guilty plea as required by Rule 11(f) of the Federal Rules of Criminal Procedure.

### III. Conclusion

For the foregoing reasons, the conviction and sentence of the defendant-appellant are AFFIRMED; and the district court's judgment denying the defendant-appellant's motion to dismiss the indictment

12

for lack of jurisdiction is AFFIRMED.