# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 25, 2010

No. 08-10831

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JAMES RAY PHIPPS

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, GARZA, and HAYNES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

James Ray Phipps appeals his conviction for mail and wire fraud, and aiding and abetting, in violation of 18 U.S.C. §§ 1341, 1343, and 2; corrupt endeavoring to obstruct and impede the internal revenue laws, in violation of 26 U.S.C. § 7212(a); and income tax evasion, in violation of 26 U.S.C. § 7201. For the reasons set forth below, we AFFIRM.

## I

For over twenty years, Phipps has operated self-styled "educational programs dedicated to teaching others how to eliminate their debt and live within their means." Despite notice from the United States Postal Service

("USPS") that both of his prior, similarly structured endeavors were considered illegal pyramid schemes, Phipps created the instant program, Life Without Debt ("LWD"). Members were encouraged to contribute between $2,000 and $100,000; Phipps claimed that a larger contribution would engender larger returns. As with prior schemes, members were required to recruit two new members prior to receiving any payments; they also received educational literature and tapes with anti-income tax messages. Notably, Phipps told participants that the income received through LWD would not need to be reported to the IRS. Phipps himself did not report any of his LWD income to the IRS.

During his ten years of operating LWD, Phipps received notices from the states of Georgia, Oklahoma, and Maryland that LWD constituted a pyramid scheme, and he may be subject to civil or criminal enforcement actions as a result. Indeed, six LWD members were arrested in Florida for felony and misdemeanor promotion of and participation in an illegal lottery. Despite these warnings that his activities might be illegal, Phipps continued to recruit new members through mass mailings, teleconference calls, and seminars in major cities. Phipps sent periodic small payments to members to encourage them to remain in the program, recruit new members, or reinvest in larger payment plans. Though Phipps marketed LWD as a compound-leveraging investment program that would generate large sums of money for its investors, less than nine percent of LWD's approximately 31,000 participants made a net profit above their initial investment. Phipps "earned" $4,606,396 from LWD, $1,381,683 of which was "participation income," and $3,224,782 of which he paid to himself under aliases within the scheme.

A jury found Phipps guilty of mail and wire fraud and aiding and abetting, corrupt endeavor to obstruct and impede the due administration of the internal

No. 08-10831

revenue laws, and income tax evasion.[1]  Phipps was sentenced to 210 months imprisonment, to be followed by three years of supervised release.  Phipps was also ordered to pay $1,402,446 in restitution.  Phipps now appeals the sufficiency of the evidence to support his convictions and whether his sentence was properly calculated.

## II

Phipps challenges the sufficiency of the evidence to support his mail and wire fraud, corrupt impediment of the internal revenue laws, and income tax evasion convictions.  In evaluating a defendant's argument regarding the sufficiency of the evidence supporting his conviction, we consider "whether a rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense beyond a reasonable doubt."  *United States v. Riviera*, 295 F.3d 461, 466 (5th Cir. 2002).

## A

Phipps contends that the Government failed to present sufficient evidence that he acted with the specific intent required for mail and wire fraud offenses under 18 U.S.C. §§ 1341 and 1343.  Specifically, he argues that evidence of warnings he received regarding programs that preceded LWD did not constitute sufficient evidence of intent to commit fraud via LWD.

The elements of 18 U.S.C. §§ 1341 and 1343 are parallel, and therefore we apply the same analysis to both statutes.  *See United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999). Mail and wire fraud are both specific intent crimes that require the Government to prove that a defendant knew the scheme involved

---

[1] Phipps was also indicted for twelve counts of money laundering and aiding and abetting, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2.  Two of these counts were dismissed during trial, and the district court entered a judgment of acquittal on all of the other money laundering counts based on its reading of *United States v. Santos*, ___ U.S. ___, 128 S. Ct. 2020 (2008).

false representations. *United States v. Brown*, 459 F.3d 509, 518–19 (5th Cir. 2006) (wire fraud); *United States v. Rochester*, 898 F.2d 971, 976 (5th Cir. 1990) (mail fraud).

Phipps argues that the evidence demonstrates that he sincerely endeavored to educate members of LWD about financial planning and the methodologies of his program rather than to defraud them. However, he presents no support for this self-serving statement beyond diagrams of LWD's upline and downline payment programs, which he drafted. Furthermore, the jury heard testimony from a retired USPS Inspector who had investigated Phipps and who testified to the pyramid structure of all of Phipps' programs (his two prior programs—Fast Cash Financial Services and Marathon Marketing—and LWD).

The record also demonstrates that Phipps had been warned by various federal and state law enforcement authorities of the illegality and fraudulence of his basic scheme, both while operating prior programs and while operating LWD. A prior warning to cease and desist fraudulent activity can serve as evidence of specific intent to defraud in a subsequent, similar scheme. *See United States v. Aubin*, 87 F.3d 141, 147 (5th Cir. 1996). Despite receiving warnings that his activities were illegal, Phipps continued to operate these pyramid-style programs, merely changing their names to avoid detection. Given this evidence, the jury reasonably could have concluded that Phipps acted with the specific intent required for mail and wire fraud in making fraudulent and illegal representations to his potential LWD program members.

**B**

Phipps contends that the Government failed to present sufficient evidence of wire fraud because the "wire" at issue, a single fax sent by a program participant to Phipps notifying him of an address change, was only tangentially related to the alleged fraud. Phipps argues that to sustain a conviction for wire

fraud, "the government must present evidence that shows a link between the fraudulent activity and the [wire] at issue which demonstrates that the [wire] either advanced or [was] integral to the fraud." *United States v. Strong*, 371 F.3d 225, 230 (5th Cir. 2004) (internal quotation marks and citation omitted). Phipps claims that the fax sent by a program participant to Phipps neither advanced nor was integral to the alleged fraud, and therefore failed to establish the requisite connection between the wire and the fraud.

Phipps argues that because he did not send the fax, it could not "advance" the alleged fraud. However, there is no statutory requirement that a defendant *generate* a wire transmission or mailing. Phipps needed only to *cause* the use of wire communication facilities. *See* 18 U.S.C. § 1343. By providing the fax number to participants in LWD, it was reasonably foreseeable that participants would use the number for customer service inquiries, as the participant in question did when she faxed an update to her account information.

Phipps also argues that the fax was too tenuously connected to the fraud to be considered "integral," as it merely provided a change of address after the alleged fraud, inducing entry into LWD, had been consummated. Though the federal fraud statute requires more than a tangential relationship between the wire communication and the fraud, "[i]t is sufficient for the mailing to be incident to an essential part of the scheme or a step in [the] plot." *Strong*, 371 F.3d at 228. Communications that occur after initial purchase into the fraudulent scheme, "designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect[,] are mailings in furtherance of the scheme." *United States v. Toney*, 598 F.2d 1349, 1353 (5th Cir. 1979) (citation omitted). Accordingly, a rational jury could find that a participant's fax updating her contact information in anticipation of future LWD payments was an important part of "lulling" LWD participants into

believing that Phipps' investment scheme was a legal, secure financial program, and therefore essential to the overall commission of wire fraud.

## C

Phipps challenges the sufficiency of the evidence presented to support his conviction for corrupt impediment under 26 U.S.C. § 7212(a). Section 7212(a) criminalizes the actions of "[w]hoever corruptly . . . obstructs or impedes, or endeavors to obstruct or impede the due administration of this title." A defendant acts "corruptly" for the purposes of § 7212(a) when he or she acts "with the intention of securing improper benefits or advantages for one's self or others." *United States v. Reeves*, 752 F.2d 995, 1001–02 (5th Cir. 1985).

Phipps alleges that his tax evasion advocacy was protected by the First Amendment. This allegation is without merit. Telling his adherents that he did not report his LWD income to the IRS and encouraging them to do the same place Phipps' speech within the sphere of proscribed speech likely to incite or produce "imminent lawless action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *see also United States v. Kelley*, 864 F.2d 569, 577 (7th Cir. 1989) (rejecting First Amendment protection of "more than mere advocacy" where defendant told clients to keep tax shelter information secret from the IRS and received commissions from sales); *United States v. Buttorff*, 572 F.2d 619, 624 (8th Cir. 1978) (rejecting First Amendment protection of activity that went "beyond mere advocacy of tax reform" in explaining to others how to avoid income tax liability). Phipps has not shown that his behavior advising and advocating tax evasion to LWD participants should be entitled to First Amendment protection.

As his advocacy of tax-evasion strategies is unprotected speech, the jury was entitled to rely on it as evidence supporting his conviction for corrupt impediment of the internal revenue laws. Thus, given that Phipps directly advised and encouraged program participants to break federal law by failing to

pay their income taxes, a reasonable jury could have found Phipps guilty on this charge.

## D

Phipps contends that there was insufficient evidence to sustain a conviction based on income tax evasion pursuant to 26 U.S.C. § 7201. Specifically, Phipps contends that he was genuine in his belief that the cash receipts from LWD did not constitute income that needed to be reported to the IRS. Evasion of income tax requires "willfulness," or a voluntary, intentional violation of a known legal duty. *Cheek v. United States*, 498 U.S. 192, 199–200 (1991). Phipps claims he sincerely believed his LWD income was not taxable. However, during several of the years that LWD was in business, the IRS prepared and filed substitute tax returns and gave Phipps notice of these returns as well as the taxes he owed. Therefore, Phipps was at the very least on notice that the IRS expected him to pay taxes on his LWD income.

Furthermore, part of the LWD program was to advise participants on how to plan a "reliance defense" against paying income tax. The key component of this defense is for a participant to rely on the advice of income tax professionals and other credible sources that could be used to convince a jury that the participant sincerely believed he or she was not liable for federal or state income tax. Given that he was advising others to employ calculated tactics to avoid paying income taxes, and his receipt of prior notice from the IRS regarding his tax liability, a rational jury reasonably could have found that Phipps willfully evaded paying income tax on his LWD income.

## III

Phipps also challenges the district court's calculation of the amount of loss used for determining his sentence. Phipps did not specifically object to this calculation at sentencing; therefore, we review for plain error. *United States v.*

No. 08-10831

*Green*, 324 F.3d 375, 381 (5th Cir. 2003). A showing of plain error requires (1) an error, (2) that is clear or obvious, and (3) that affected Phipps' substantial rights. *United States v. Cotton*, 535 U.S. 625, 631–32 (2002); *United States v. Olano*, 507 U.S. 725, 732–34 (1993).

Phipps contends that the district court erred in failing to reduce his loss amount by the value of the materials received by the program participants. The Guidelines state that the amount of "[l]oss shall be reduced by . . . the fair market value of . . . the services rendered, by the defendant . . . to the victim before the offense was detected." U.S.S.G. § 2B1.1 cmt. 3(E)(i). However, Phipps offered no evidence as to the value of the tapes and educational materials he suggests that the court should have considered. Without such evidence, the district court not only had no reason to consider such a reduction, but also had no basis on which to determine the amount of the reduction even if it had considered Phipps' claim.

Moreover, the district court heard testimony from Agent Lagos, the case agent in charge of Phipps' investigation, who stated that all of the information regarding pecuniary loss from members of Phipps' program came directly from Phipps' computer database where he recorded his financial activities. Based on those records, Lagos determined a loss value of $16,215,882, the amount which the district court adopted as its final loss determination. Accordingly, the district court raised Phipps' offense level by 20 levels based on Guideline § 2B1.1(b)(1)(K), which covers losses ranging from $7,000,000 to $20,000,000. Phipps would need to demonstrate that his dissemination of educational materials entitles him to a reduction of more than $9,215,882 before his loss amount would change his offense level. He has not done so. Thus, we find Phipps has not shown plain error in the district court's calculation of his loss amount.

No. 08-10831

**IV**

For the foregoing reasons, we AFFIRM.