**REVISED AUGUST 28, 2014**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30681

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHNNIE TRAXLER,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, ELROD, and COSTA[*], Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Defendant Johnnie Traxler pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 for making unauthorized purchases on her employer's credit cards. Traxler now appeals the district court's denial of her motion to dismiss the indictment for lack of jurisdiction, which she preserved.

---

[*]     Judge Costa participated by designation in the oral argument of this case as a United States District Judge for the Southern District of Texas. Since that time he has been appointed as a Fifth Circuit Judge.

No. 13-30681

Because the government provided sufficient evidence that Traxler used the mails in executing her ongoing fraudulent scheme, we AFFIRM.

I.

Traxler worked as an association executive for the Northeast Louisiana Association of Realtors ("NLAR") from August 2008 until October 2010. Beginning in the summer of 2009, Traxler and another employee began making personal purchases with the NLAR's credit cards, and opened up additional unauthorized accounts. The NLAR apparently did not notice their activities, and continued to receive and pay its credit card bill during this time. According to the government, the bulk of the losses resulted from their fraudulent activity on the NLAR's Visa card, Sam's Club account, and an unauthorized Home Depot account. The government estimated that Traxler was responsible for $66,966.25 in total losses, including a $32,585.00 loss to NLAR. At some point, her activities were reported to the NLAR Board, which initiated an audit, discovered the fraud, and then fired Traxler.

Traxler was charged with mail fraud in violation of 18 U.S.C. § 1341. The indictment alleged that Traxler's unauthorized purchases caused a Visa card statement to be sent to the NLAR address that included a $101.43 charge to Dish Network for service at Traxler's residence. Traxler moved to dismiss the indictment for lack of jurisdiction, arguing that there was no federal jurisdiction because the mailing alleged in the indictment was a routine statement from the credit card company and did not satisfy the 18 U.S.C. § 1341 mailing requirement.

The district court denied her motion, finding that the mailing alleged in the indictment satisfied the jurisdictional requirement to support the charge under 18 U.S.C. § 1341. Traxler then conditionally pleaded guilty to the mail fraud count, preserving her right to appeal the denial of her motion to dismiss

No. 13-30681

the indictment.  The district court accepted Traxler's guilty plea and sentenced her to 15 months in prison, to be followed by a three-year term of supervised release.  Traxler was also ordered to pay $40,000 in stipulated restitution.  On appeal, Traxler challenges the district court's denial of her motion to dismiss.

## II.

Traxler argues that the district court lacked jurisdiction because she did not use the mails to further a scheme to defraud the NLAR.  *See United States v. Pepper*, 51 F.3d 469, 474 (5th Cir. 1995) (explaining that "this element is the basis of federal jurisdiction").  We review jurisdictional questions *de novo*.  *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999) (citing *United States v. Becerra*, 155 F.3d 740, 756 (5th Cir. 1998)).

## III.

To prove mail fraud under 18 U.S.C. § 1341, the government must show: (1) a scheme to defraud; (2) the use of the mails to execute the scheme; and (3) the specific intent to defraud.  *United States v. Bieganowski*, 313 F.3d 264, 275 (5th Cir. 2002) (citing *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001)).  Traxler does not challenge the existence of a scheme or her intent to commit fraud.  Instead, she argues that she did not use the mails to execute the scheme.  We disagree.

In order to meet 18 U.S.C. § 1341's jurisdictional requirement, use of the mails "need not be an essential element of the scheme."  *Schmuck v. United States*, 489 U.S. 705, 710 (1989) (citing *Pereira v. United States*, 347 U.S. 1, 8 (1954)).  It will suffice if the mails are merely "incident to an essential part of the scheme."  *Id.*  The use of the mails may also be merely "a step in [the] plot."  *Id.* at 711 (quoting *Badders v. United States*, 240 U.S. 391, 394 (1916)).  In addition, the defendant need not personally effect the mailing.  It is sufficient that the defendant "cause" the mailing, or "act with knowledge that the use of

the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira*, 347 U.S. at 8–9 (quoting *United States v. Kenofskey*, 243 U.S. 440 (1917)).

In support of her position, Traxler relies heavily on the Supreme Court's decision in *Parr v. United States*, 363 U.S. 370 (1960). In *Parr*, the defendants were school district employees who made unauthorized gasoline and oil purchases on credit cards. *Id.* at 381–82. To support the mail fraud charge, the government relied on the fact that the oil companies mailed invoices for these unauthorized purchases to the school district, and the school district paid the invoices by mailing checks. *Id.* at 382. The Supreme Court concluded that the fraudulent scheme reached its fruition at the time the defendants received the gasoline and other service items, and was therefore already complete before the invoices were ever sent through the mail. *Id.* at 392–93. As a result, the Supreme Court held that the mailing requirement was not met and that there was no jurisdiction over the scheme. Traxler contents that her fraud likewise reached its fruition at the time that she made her unauthorized purchases, and that her scheme was therefore finished by the time the NLAR received the credit card bills for those purchases. We recognize that there are a number of similarities between this case and *Parr*. However, *Parr* was not the Supreme Court's last word on this topic.

Since *Parr*, the Supreme Court has addressed this jurisdictional question several times. *See Schmuck*, 489 U.S. 705 (jurisdictional element satisfied when defendant car dealer used the mails to complete the sale of vehicles by transferring title after turning back odometers); *United States v. Maze*, 414 U.S. 395 (1974) (no jurisdiction when defendant fraudulently used credit card for food and lodging); *United States v. Sampson*, 371 U.S. 75 (1962) (jurisdictional element satisfied when defendants used letter to mislead fraud

4

victims into believing that their applications for loans had been accepted). Our circuit has subsequently applied the analysis laid down in these cases in a number of circumstances. *See, e.g., United States v. Arledge*, 553 F.3d 881, 891 (5th Cir. 2008); *Bieganowski,* 313 F.3d at 275; *Mills,* 199 F.3d 184; *United States v. Evans*, 148 F.3d 477, 480 (5th Cir. 1998); *United States v. Vonsteen*, 872 F.2d 626, 627 (5th Cir. 1989), *superseded on other grounds*, 950 F.2d 1086 (5th Cir. 1992) (en banc).

Rather than deciding this question based solely on *Parr*, we must look to our Fifth Circuit precedent interpreting *Parr* and the subsequent Supreme Court cases. "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (citation omitted). "Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." *Id.; see also McClain v. Lufkin Indus.*, 649 F.3d 374, 385 (5th Cir. 2011) ("This court's rule of orderliness prevents one panel from overruling the decision of a prior panel."); *Barber v. Johnson*, 145 F.3d 234, 237 (5th Cir. 1998) ("Even if persuaded that [our prior panel opinion] is inconsistent with [an earlier Supreme Court opinion], we may not ignore the decision, for in this circuit one panel may not overrule the decision of a prior panel."); *Wilson v. Taylor*, 658 F.2d 1021, 1034 (5th Cir. 1981) ("It is the firm rule of this circuit that we cannot disregard the precedent set by a prior panel, even though we perceive error in the precedent."). Indeed, in *Jacobs*, we specifically rejected the idea that later Supreme Court and other decisions that were not directly on point could alter the binding nature of our prior precedent. *Jacobs*, 548 F.3d at 378.

No. 13-30681

Under our post-*Parr* precedent, the critical question is whether Traxler's fraud was completed prior to the transmission of documents through the mails, or if use of the mails was part of an ongoing scheme. While the exact delineation between these cases remains murky, we have drawn a line between cases involving a "one-shot" operation and "ongoing venture[s]." *See id.* at 189 (internal quotation marks omitted).[1] Thus, in *Mills* we held that the jurisdictional requirement was met because the defendant's scheme to embezzle funds from his employer "involved numerous checks totaling at least $125,000 and extended over at least thirteen months." *Id.* at 189–90. We also noted that the mail was integral to the "success of the ongoing fraudulent venture" because it "depended upon continued harmonious relations among Mills's personal banks, [other financial institutions, and his employer]. Otherwise, future fraudulent checks issued pursuant to the scheme would be dishonored and not credited to Mills's accounts." *Id.* at 190. As a result, "Mills was not indifferent as to when the scheme was discovered or who bore the loss because the continuation of the scheme depended upon the successful deception of the intermediate parties." *Id.*

Likewise, the indictment here charges Traxler with repeatedly making unauthorized use of her employer's credit cards over the course of more than a year. The PSR estimated that Traxler's scheme caused a loss of $66,966.25, including a loss of $32,585.00 to her employer. Traxler did not make all of these expenditures at once. Instead, she was able to gradually steal from the NLAR by making multiple purchases over time. Traxler would not have been able to continue to defraud the NLAR if her employer had not received, and

---

[1]    Although *Mills* addressed a wire fraud charge, we noted that "[t]he Supreme Court has said that because the mail and wire fraud statutes share the same language in relevant part, the same analysis applies to each" and accordingly analyzed the case under the same case law relevant here. *Mills*, 199 F.3d at 188.

6

paid the credit card bills. The PSR notes four separate occasions when those bills were sent to her employer through the mail. Just as in *Mills*, Traxler's continued fraud thus depended on her employer receiving and paying the credit card bills through the mails, so that the credit card company would not become aware of her fraud or decline her subsequent purchases. As a result, Traxler likewise used the mails to execute her fraud. *See* 18 U.S.C. § 1341.

In *Mills* we also distinguished cases, like the one at issue here, from those where we have determined that the use of mails was insufficient to confer federal jurisdiction. We explained that in *Kann v. United States*, 323 U.S. 88 (1944),

> the Supreme Court held that where the mail fraud defendants cashed fraudulently obtained checks and received the moneys contemplated by the scheme such that the scheme reached fruition before the checks were placed into the mails for collection, it was "immaterial" to the defendants how the banks that paid or credited the checks would collect from the drawee banks and "[i]t cannot be said that the mailings in question were for the purpose of executing the scheme, as the statute requires."

*Mills*, 199 F.3d at 188–89 (quoting *Kann,* 323 U.S. at 94). Likewise, we explained that the defendants in *Maze*, *Parr*, *Evens*, and *Vontsteen* were unconcerned with whether anyone ever paid their unauthorized charges. *Id.* at 189. By contrast, it *was* material to both Mills and Traxler that their employers continue to make payments in order for their ongoing schemes to continue. *See id.* at 190. Unlike the "one-off" charges in *Kann*, *Maze*, *Parr*, *Evens*, and *Vontsteen*, Mills and Traxler were able to continue to take advantage of their employers only because their unauthorized bills were received and paid. *See id.* at 188–90 (distinguishing *Kann*, *Maze*, *Parr*, *Evens*, and *Vontsteen*).

As the Supreme Court has noted, "[t]o be part of the execution of the fraud, . . . the use of the mails need not be an essential element of the scheme.

No. 13-30681

It is sufficient for the mailing to be incident to an essential part of the scheme, or a step in [the] plot." *Schmuck*, 489 U.S. at 710–11 (internal quotation marks and citations omitted).  Based on our decision in *Mills*, the use of the mails was a step in Traxler's plot to defraud her employer.  Because we are bound by that precedent, we hold that there is jurisdiction here.

IV.

Accordingly, we AFFIRM the district court.